01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
07                                      AT SEATTLE

08  RICHARD GIBRICH,                    )
                                        )   CASE NO. C09-1617-MJP
09          Plaintiff,                  )
                                        )
10      v.                              )   REPORT AND RECOMMENDATION
                                        )   RE: SOCIAL SECURITY DISABILITY
11  MICHAEL J. ASTRUE, Commissioner     )   APPEAL
    of Social Security,                 )
12                                      )
            Defendant.                  )
13  _____ )

14          Plaintiff Richard Gibrich proceeds through counsel in his appeal of a final decision of

15  the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

16  denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an

17  Administrative Law Judge (ALJ).   Having considered the ALJ's decision, the administrative

18  record (AR), and all memoranda of record, the Court recommends that this matter be

19  REMANDED for further administrative proceedings.

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01                    **<u>FACTS AND PROCEDURAL HISTORY</u>**

02         Plaintiff was born on XXXX, 1954.[1]  He completed one year of college.  (AR 96.)

03  Plaintiff previously worked as a dishwasher/kitchen helper and forklift operator.   (AR 23, 92.)

04  Plaintiff filed an application for SSI in June 2004.  (AR 84-86.)  He alleged disability

05  beginning May 2001 due to back pain. (AR 84, 91.)   His application was denied at the initial

06  level and on reconsideration, and he timely requested a hearing.

07         On November 17, 2006, ALJ Verrell Dethloff held a hearing, taking testimony from

08  plaintiff.  (AR 416-43.)   On January 29, 2007, the ALJ issued a decision finding plaintiff not

09  disabled.   (AR 32-43.)

10         Plaintiff timely appealed.   The Appeals Council, on October 30, 2007, remanded

11  plaintiff's claim to the ALJ.  (AR 73-74.)   The ALJ held a supplemental hearing on January

12  2008, taking testimony from plaintiff and vocational expert Merrill Cohen.  (AR 444-55.)

13  The ALJ again, on June 20, 2008, issued a decision finding plaintiff not disabled.   (AR 16-25.)

14  With some modifications, he incorporated his previous discussion of exhibits and other

15  evidence, analysis of exhibits, and the conclusions reached.   (AR 18.)

16         The Appeals Council denied plaintiff's request for review on October 23, 2009 (AR

17  6-9), making the ALJ's decision the final decision of the Commissioner.   Plaintiff appealed

18  this final decision of the Commissioner to this Court.

19                              **<u>JURISDICTION</u>**

20         The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

21  _____

22         1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
    Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
    Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01 / / /

02 **<u>DISCUSSION</u>**

03     The Commissioner follows a five-step sequential evaluation process for determining

04 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

05 must be determined whether the claimant is gainfully employed.   The ALJ found that plaintiff

06 had not engaged in substantial gainful activity (SGA) since June 24, 2004, the date he

07 protectively filed his application for SSI and the earliest date relevant to his claim.   He

08 concluded that plaintiff's part-time work at a non-profit thrift store did not rise to the level of

09 SGA.

10     At step two, it must be determined whether a claimant suffers from a severe impairment.

11 The ALJ found plaintiff's lumbar and cervical degenerative disc disease, thoracic osteoarthritis,

12 dysthymia, and obesity severe.

13     Step three asks whether a claimant's impairments meet or equal a listed impairment.

14 The ALJ concluded plaintiff did not have an impairment or combination of impairments that

15 met or medically equaled a listing.

16     If a claimant's impairments do not meet or equal a listing, the Commissioner must

17 assess residual functional capacity (RFC) and determine at step four whether the claimant has

18 demonstrated an inability to perform past relevant work.   The ALJ found plaintiff able to

19 perform light work, meaning he could stand and/or walk for six hours in an eight hour day, sit

20 for six hours in an eight hour day, and do unlimited pushing and pulling.   The ALJ found

21 plaintiff could occasionally climb, balance, stoop, kneel, crouch, crawl, and bend, that he could

22 perform no more than simple and complex tasks, and that he should have no more than

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01 superficial contact with the public and routine supervision.  With this RFC, the ALJ found

02 plaintiff unable to perform any past relevant work.

03      If a claimant demonstrates an inability to perform past relevant work, the burden shifts

04 to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

05 an adjustment to work that exists in significant levels in the national economy.  With the

06 assistance of the vocational expert, the ALJ found plaintiff able to perform other jobs, such as

07 work as a small products assembler and outside deliverer.

08      This Court's review of the ALJ's decision is limited to whether the decision is in

09 accordance with the law and the findings supported by substantial evidence in the record as a

10 whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means

11 more than a scintilla, but less than a preponderance; it means such relevant evidence as a

12 reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

13 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

14 supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

15 F.3d 947, 954 (9th Cir. 2002).

16      Plaintiff argues that the ALJ erred in ruling that his RFC assessment was supported by

17 "mild" objective findings, in consideration of the issues of following prescribed treatment and

18 obesity, in evaluating the opinions of a treating physician, and in rendering the credibility

19 decision.  He requests remand for an award of benefits or, in the alternative, for further

20 administrative proceedings.  The Commissioner argues that the ALJ's decision is supported by

21 substantial evidence and should be affirmed.

22      The Court has discretion to remand for further proceedings or to award benefits.  *See*

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of

02  benefits where "the record has been fully developed and further administrative proceedings

03  would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir.

04  2002).

05          Such a circumstance arises when: (1) the ALJ has failed to provide legally
            sufficient reasons for rejecting the claimant's evidence; (2) there are no

06          outstanding issues that must be resolved before a determination of disability can
            be made; and (3) it is clear from the record that the ALJ would be required to

07          find the claimant disabled if he considered the claimant's evidence.

08  *Id.* at 1076-77.   For the reasons described below, the Court concludes that this matter should be

09  remanded for further administrative proceedings.

10  Objective Medical Evidence

11      Objective medical evidence refers to "signs" and laboratory findings. 20 C.F.R. §§

12  404.1512(b)(1), 416.912(b)(1). "Signs are anatomical, physiological, or psychological

13  abnormalities which can be observed, apart from your statements (symptoms). Signs must be

14  shown by medically acceptable clinical diagnostic techniques." §§ 404.1528(b), 416.928(b).

15      The ALJ in this case stated that the RFC assessment was "supported by the mild

16  objective findings of record, which do not support the degree of disability" alleged.   (AR 22.)

17  Plaintiff contends the ALJ mischaracterized the record given the plethora of objective findings

18  greater than "mild" severity.   He points to June 2003 x-rays of the cervical spine and

19  lumbosacral spine showing "moderate to marked" degenerative changes (AR 213-14), and

20  November 2003 MRI studies showing "severe" and "moderate" disc space narrowing on the

21  lumbar spine and "moderate" bilateral facet osteoarthritis on the thoracic spine (AR 205-06).

22      Plaintiff also points to his objective weight as reflecting more than mild signs.

01   Pursuant to Social Security Ruling (SSR) 02-1p, "[o]besity is a complex, chronic disease

02   characterized by excessive accumulation of body fat[]" and is classified in adults according to

03   Body Mass Index (BMI), a height/weight ratio.   Plaintiff points to the record as reflecting that

04   he had a BMI well over 40, denoting "extreme obesity," at all relevant times.   (*See* Dkt. 12 at

05   6-7 (collecting data as to weight and BMI from record).)   *See also* SSR 02-1p ("level III,

06   termed 'extreme' obesity and representing the greatest risk for developing obesity-related

07   impairments, includes BMIs greater than or equal to 40.")   He avers, therefore, that substantial

08   evidence does not support the ALJ's conclusion that "mild" objective findings support the RFC

09   assessment.

10        The Commissioner observes that the ALJ acknowledged and summarized the 2003

11   x-rays and MRI studies highlighted here by plaintiff (AR 20, 36) and used those findings in

12   limiting plaintiff to light work (AR 36).   Among other arguments, he asserts that, for the ALJ,

13   the moderate and marked findings were offset by findings termed mild, including, but not

14   limited to, a number of findings from the November 2003 MRI studies.   (AR 36.)   The

15   Commissioner also notes the ALJ's recognition of plaintiff's obesity and BMI, and his

16   formulation of associated exertional and postural limitations.   (*See*, *e.g.*, AR 20, 23.)   He

17   points to the recognition in SSR 02-1p that BMI "levels describe the extent of obesity, but they

18   do not correlate with any specific degree of functional loss."   The Commissioner also points to

19   the ALJ's consideration of treating physician Dr. Sam Eggertsen's opinions as related to

20   obesity, including, *inter alia*, that physician's failure to indicate any specific functional

21   limitations due to obesity and his consistent directive that plaintiff should engage in aerobic

22   exercise.   (AR 21.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01          The ALJ did describe the 2003 objective findings in his earlier decision.  (AR 36.)  He

02   recited the moderate and marked findings on the June 2003 x-rays ordered by Dr. Thomas Chin,

03   noted that Dr. Eggertsen ordered further studies, and described the November 2003 results as

04   follows:  "Lumbar spine x-rays showed degenerative disc disease at L4-5 and L5-S1 with no

05   focal disc herniation or significant appearing central stenosis.  Thoracic spine x-rays showed

06   degenerative facet osteoarthritis at T2-T3 with no cord impingement and degenerative disc

07   disease in the mid and lower cervical spine also without impingement."  (AR 36.)  The ALJ

08   gave weight to the November 2003 objective findings and stated that "[c]orresponding limits

09   [were] reflected in claimant's restriction to light duty work."  (*Id.*)  The ALJ mentioned that

10   Dr. Eggertsen later "noted that claimant had a neural surgery consultation pending but that his

11   review of claimant's MRI showed no surgically amenable lesion[,]" as also found by a

12   subsequent reviewing physician.  (*Id.*)  He gave weight to the fact that treating and reviewing

13   physicians "felt that surgery was not indicated for claimant."  (AR 37.)

14          Additionally, among other findings, the ALJ described a June 2003 examination by Dr.

15   Chin finding plaintiff, *inter alia*, "was tender to palpation of the lower cervical spine and right

16   lower paracervical areas[,]" and had "normal muscle strength" and gait.  (AR 35.)  He gave

17   little weight to Dr. Chin's opinion limiting plaintiff to sedentary work, and a similar opinion

18   from Dr. Eggertsen in May 2004, given the lack of supporting objective evidence.  (*Id.*)  The

19   ALJ also noted that, in January 2004, Dr. Eggertsen's examination of plaintiff's back "showed

20   <u>no</u> tenderness to palpation[]" (AR 36; emphasis in original), that an August 2005 examination

21   revealed "diffuse tenderness over the paraspinous muscles of the lower thoracic and upper

22   lumbar back" but "no objective findings of limits[]" (AR 39), and opined that, while two later

01  forms completed by Dr. Eggertsen found plaintiff could perform sedentary work, these

02  opinions were not supported by his treatment notes or the objective findings of record (AR

03  38-39).   The ALJ, as in the later decision, ultimately described the record as reflecting "mild

04  objective findings[.]"   (AR 41.)   Additionally, in the later decision, the ALJ cited the portions

05  of the record reflecting the 2003 objective findings in stating that plaintiff "has a history of

06  cervical and low back degenerative changes, and obesity[,]" while adding:   "There was no

07  finding of neural compromise, however[.]" (AR 20; internal citations to record omitted.)

08      The ALJ also, as noted by the Commissioner, considered plaintiff's obesity and BMI

09  and assessed associated limitations.   (AR 20-23.)   He described Dr. Eggertsen's treatment in

10  relation to that condition in detail, including frequent admonitions to lose weight and exercise,

11  the lack of specific functional limitations assessed, and the relative lack of attention paid to this

12  condition.   (AR 21 ("Overall, in his treatment notes Dr. Eggertsen mentioned obesity but did

13  not direct much attention to it other than advising the claimant to exercise more, and lose

14  weight."))   The ALJ thereafter found a reviewing physician's opinion that plaintiff could do

15  light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling

16  consistent with the effects of his impairments, including obesity.   (AR 22.)   He also, as

17  discussed further below, considered plaintiff's failure to follow recommendations on diet and

18  exercise in assessing plaintiff's credibility.   (AR 23.)

19      In his reply, plaintiff argues, *inter alia*, that the absence of disc herniation requiring

20  back surgery is a red herring.   He asserts that, in fact, his back impairment is degenerative disc

21  disease, not a herniated disc.

22      Plaintiff's reliance on his BMI levels is unavailing.   As noted by the Commissioner,

01   BMI "levels describe the extent of obesity, but they do not correlate with any specific degree of

02   functional loss." SSR 02-1p.   In this case, the ALJ appropriately found plaintiff's obesity

03   severe and assessed associated limitations. (AR 19-20, 23.)   Nor does plaintiff successfully

04   discredit the ALJ's consideration of the absence of a surgery indication.   He does not, for

05   example, point to record evidence supporting the contention that the lack of a surgical

06   recommendation is not medically relevant in considering the severity of the condition of

07   degenerative disc disease.

08         The remaining issue, therefore, is whether the ALJ committed reversible error in

09   relation to the results of the 2003 x-rays and MRI studies.   As averred by the Commissioner,

10   "[t]he ALJ is responsible for resolving conflicts in the medical record."   *Carmickle v. Comm'r*

11   *of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040

12   (9th Cir. 2003)).   The ALJ in this case did not ignore the results of the x-rays and MRI studies.

13   He read the record, overall, as revealing generally mild objective findings.

14         Standing alone, it is questionable whether the ALJ's description of the objective

15   evidence demonstrates reversible error.   However, ideally, the ALJ would have expanded on

16   his statement as to objective findings or otherwise distinguished the 2003 x-ray and MRI study

17   findings.   (*See* AR 22.)   Because the Court finds remand in this matter appropriate for the

18   reasons described below, it also finds that the ALJ should be directed to clarify his statement as

19   to objective findings.   In particular, the ALJ must explain the objective findings he

20   characterizes as mild and directly address the 2003 x-ray and MRI study findings.

21                       Following Prescribed Treatment

22         Plaintiff argues that the ALJ erroneously applied the failure-to-follow-prescribed-

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01  treatment regulation, 20 C.F.R. §§ 404.1530, 416.930.   That regulation provides that a

02  claimant must follow prescribed treatment if that treatment can restore the claimant's ability to

03  work.   *Id*.   However, an adjudicator may consider the failure to follow prescribed treatment in

04  an obesity case only where a plaintiff has been found disabled due to obesity, or obesity and a

05  combination of other impairments.   SSR 02-1p.   Here, plaintiff argues, the ALJ improperly

06  relied on §§ 404.1530 and 416.930 in finding that "a remediable impairment cannot provide the

07  predicate for a finding of disability[]" (AR 23), given that he never found, before taking into

08  account any failure to follow prescribed treatment, that plaintiff would be disabled.   He asserts

09  further error in relation to SSR 02-1p and §§ 404.1530 and 416.930, in that the treatment at

10  issue must be prescribed treatment, not simply recommended, in that there must be clear

11  evidence that treatment would be successful, and that a claimant may have a "good reason" for

12  not following prescribed treatment.

13          The Commissioner concedes error in the application of the failure-to-follow-prescribed-

14  treatment regulation, but maintains that the error was harmless given the many other reasons

15  offered for the ALJ's conclusion.   *See Carmickle*, 533 F.3d at 1162-63 (error may be deemed

16  harmless where there remains the support of substantial evidence through other valid reasons to

17  support the ALJ's conclusion).   He notes that the ALJ's discussion of this issue appeared in the

18  final paragraph of the RFC assessment, and was prefaced by the phrase:   "In addition I note . .

19  . ."   (AR 23.)

20          This error was harmless.   As argued by the Commissioner, the ALJ discussed this issue

21  as one of many reasons supporting his RFC assessment.   (*See* AR 19-23.)   Nonetheless, on

22  remand, the ALJ should, if necessary, conduct a legally sufficient analysis as to this issue.

01  / / /

02  <u>Credibility</u>

03      Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

04  reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

05  *See also Thomas*, 278 F.3d at 958-59.   In finding a social security claimant's testimony

06  unreliable, an ALJ must render a credibility determination with sufficiently specific findings,

07  supported by substantial evidence.   "General findings are insufficient; rather, the ALJ must

08  identify what testimony is not credible and what evidence undermines the claimant's

09  complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).   "We require the ALJ to

10  build an accurate and logical bridge from the evidence to her conclusions so that we may afford

11  the claimant meaningful review of the SSA's ultimate findings."   *Blakes v. Barnhart*, 331 F.3d

12  565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his

13  reputation for truthfulness, inconsistencies either in his testimony or between his testimony and

14  his conduct, his daily activities, his work record, and testimony from physicians and third

15  parties concerning the nature, severity, and effect of the symptoms of which he complains."

16  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

17      The ALJ in this case found plaintiff's statements concerning the intensity, persistence,

18  and limiting effects of his symptoms not credible to the extent inconsistent with the RFC

19  assessment.  (AR 20.)  He first reviewed the medical record and concluded that it showed

20  plaintiff had "some symptoms and limitations, but not to the point of disability."   (AR 20-22.)

21  The ALJ then described other evidence supporting his conclusion:

22      In July 2004 he took a 3-week visit by car to California, which included a

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

Disneyland visit.  He also reported that he was able to care for pets and his son, do woodworking, shopping, exercising, and he managed other tasks as discussed in the prior decision and incorporated by reference.  These activities are consistent with the residual functional capacity determined in this matter.

In July 2004, the claimant reported very limited daily activities, including difficulty with personal care and limited walking, standing, lifting, sitting, and even reclining.  He claimed he was unable to travel much.  This was written around the time that claimant went to Disneyland, where he must have done activities highly inconsistent with his claims in this statement, including sitting in the car for travel, walking around the park, and riding rides.

A vacation and a disability are not mutually exclusive, of course, although the claimant's California trip tends to suggest that the claimant's alleged limitations have been overstated.  Although the claimant described daily activities that were very limited, other factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled.  First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.   Secondly, even if his daily activities were as limited as alleged, it is difficult to attribute the degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision.   Overall, the claimant's reportedly limited daily activities are considered to be outweighed by other more persuasive evidence in the record.

As noted before, the claimant takes a regimen of medication that is consistent with impairments and functional limitations.  But the record shows that his treatment is effective in addressing his symptoms.

In sum, the above residual functional capacity assessment is supported by the mild objective findings of record, which do not support the degree of disability that he claims.  His medical records support a limitation to light work.  As discussed before, he avoided reporting his work so he could cheat on taxes, and his earnings report is not indicative of his work history.  The claimant's inconsistent statements throughout the record, and compliance problems, negatively affect his credibility.

In particular, he has failed to diet, although some success is apparent when he does, and he failed to exercise.  Failure to follow recommended dietary guidelines militates against a finding of disability. See, Dixon v. Massanari, 270 F.3d 1171, 1179 ([8th] Cir. 2001), Dumas v. Schweicker, 712 F.2d 1545, 1553 ([2d] Cir. 1983).  Failure to lose weight as recommended may be taken into account in assessing whether pain is disabling.  Nelson v. Sullivan, 966 F.2d

01          363, 367 ([8th] Cir. 1992).   See, Osenbrock v. Apfel, 240 F.3d 1157, 1161
            ([9th] Cir. 2000); Fair v. Bowen, 885 F.2d 597, 604 ([9th] Cir. 1989).   Treating
02          source's advice to increase activity militates against credibility of complaints of
            disability.   See, Curry v. Sullivan, 925 F.2d 1127, 1130 ([9th] Cir. 1990).
03          Failure to follow through on recommendations to exercise as a means to
            ameliorate condition detracts from the credibility of complaints of pain.   Fair v.
04          Bowen, supra, at 603; Roth v. Shalala, 45 F.3d 279, 283 ([8th] Cir. 1995).

05          I find the BMI issue limits the claimant to occasional postural restrictions,
            including bending; this was largely considered by the DDS in its assessment.

06

07     (AR 22-23; internal citations to record omitted.)   The ALJ thereafter, as described above,

08     improperly applied the failure-to-follow-prescribed-treatment regulation.   (AR 23.)   (*See also*

09     AR 39-41 (2007 credibility assessment).)

10          Plaintiff first argues that the ALJ erroneously found him not credible because he did not

11     lose weight, follow a diet, or exercise enough.   He cites the Ninth Circuit's decision in *Orn v.*

12     *Astrue*, 495 F.3d 625, 638 (9th Cir. 2007), wherein the Court stated that "the failure to follow

13     treatment for obesity tells us little or nothing about a claimant's credibility."   Plaintiff

14     maintains that this erroneous reasoning of the ALJ was at the core of the credibility analysis.

15          Plaintiff also contends that, in addition to the failure to properly evaluate the objective

16     evidence and his obesity, the ALJ unreasonably found his limited activities, such as driving a

17     car and taking a vacation, to show that he could perform full time work in the light exertional

18     range.   He maintains that his overall activities were in the sedentary range.   *See Vertigan*, 260

19     F.3d at 1049 ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as

20     grocery shopping, driving a car, or limited walking for exercise, does not in any way detract

21     from her credibility as to her overall disability.")   He asserts that, as of age fifty in October

22     2004, he would be considered disabled if limited to unskilled sedentary work pursuant to the

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01  Medical-Vocational Guidelines.   20 C.F.R. Pt. 404, App. 2, Tbl. 1, Rules 201.12, 201.14

02  (designating disability for individuals limited to sedentary work who are closely approaching

03  advanced age, with a high school degree or more, does not provide for direct entry to skilled

04  work, and whose previous work is unskilled or whose skills are not transferable).   Plaintiff also

05  avers that his vacation in 2004 does not suffice as even a scintilla of evidence that he could

06  perform, full time, a wide range of light activities from 2004 through the date of the ALJ's

07  decision in 2008.

08          The Commissioner maintains that the ALJ adequately supported his credibility

09  assessment.   He points to the ALJ's reliance on the inconsistency between plaintiff's trip to

10  California and statements he made as to his limitations at around the same time as that trip, as

11  well as inconsistencies between his alleged symptoms and activities in general.   (AR 22.)   The

12  Commissioner includes reasoning contained in the ALJ's initial decision, including, for

13  example, the inconsistency between the fact that plaintiff allegedly did not drive and the

14  references in the record to "significant driving[,]" such as the fact that he had his tires rotated

15  every three months and his past arrest for driving on a suspended license.   (AR 40-41.)   He

16  asserts that the ALJ may "draw inferences logically flowing from the evidence."   *Sample v.*

17  *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (cited sources omitted).   Finally, the

18  Commissioner points to the ALJ's reliance on evidence shedding doubt on plaintiff's reputation

19  for truthfulness, such as his failure to report his work to avoid paying taxes (AR 22, 40-41), and,

20  as the ALJ noted in the initial decision, the discrepancy between his testimony that he smoked

21  three to four cigarettes a week and his failure to report this fact to his treating physician (AR

22  39).   The Commissioner maintains that the multiple bases for finding plaintiff not credible,

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01 including the evidence from health care providers undermining plaintiff's allegations, deflate

02 the contention that the core basis for the adverse credibility finding was plaintiff's inability to

03 lose weight, diet, or exercise sufficiently.

04       In rendering his decision, the ALJ cited a number of cases supporting his reliance on

05 plaintiff's failure to follow recommendations to diet, lose weight, and increase activity/

06 exercise.  (AR 23.)  However, neither the ALJ, nor the Commissioner, addressed *Orn*, the

07 more recent Ninth Circuit decision on this subject.   In that case, the Ninth Circuit distinguished

08 the applicability of its prior rulings on the issue of following prescribed treatment in cases

09 involving obesity:

> 10   Our case law is clear that if a claimant complains about disabling pain but fails
> to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ
> 11 may use such failure as a basis for finding the complaint unjustified or
> exaggerated. *See*, *e.g.*, [*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)]. In the
> 12 case of a complaint of pain, such failure may be probative of credibility, because
> a person's normal reaction is to seek relief from pain, and because modern
> 13 medicine is often successful in providing some relief. But in the case of
> impairments where the stimulus to seek relief is less pronounced, and where
> 14 medical treatment is very unlikely to be successful, the approach to credibility
> makes little sense. This second case is probably best exemplified by a claimant
> 15 whose obesity adversely affects his or her health and activities. *See* S.S.R. 02-1p
> at 9 (defining "prescribed treatment" narrowly and stating that failure to follow
> 16 treatment for obesity will "rarely" affect disability determinations). **Thus, the
> failure to follow treatment for obesity tells us little or nothing about a
> 17 claimant's credibility.** In the case before us, there is no reason to conclude from
> Orn's failure to adhere to an 1800 calorie-per-day diet that he is not telling the
> 18 truth about his medical problems that are exacerbated by his obesity.

19 *Orn*, 495 F.3d at 638 (emphasis added).   *See also Hostrawser v. Astrue*, No. 08-17474, 2010

20 U.S. App. LEXIS 2594 at *9 (9th Cir. Feb. 5, 2010) (applying *Orn* and finding ALJ erred in

21 finding claimant "not credible due to his failure to lose weight despite his doctors'

22 recommendations.")

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01          As argued by plaintiff, the ALJ in this case focused significantly on plaintiff's failures

02   in regard to dieting, losing weight, and exercising.   Indeed, he prefaced his discussion of the

03   issue with the phrase "[i]n particular[.]"   (AR 22-23.)   Given *Orn*, this emphasis is

04   problematic.   The ALJ also, as stated above, improperly applied the failure-to-follow-

05   prescribed-treatment regulation.

06          Nonetheless, the Court is not convinced that plaintiff demonstrates reversible error in

07   the ALJ's credibility assessment.   A single trip, standing alone, is not compelling evidence to

08   counter a claimant's assertions as to his limitations.   *See*, *e.g.*, *Tackett v. Apfel*, 180 F.3d 1094,

09   1103 (9th Cir. 1999) (road trip to California not sufficient to counter physicians' opinions that

10   claimant needed to shift positions every thirty minutes or so, where there was an absence of

11   information as to his positioning in the car and the frequency and duration of rest stops).

12   However, the ALJ discussed not only the fact of and activities during plaintiff's trip to

13   California, but the fact that the trip took place coextensive with plaintiff's recounting of "very

14   limited daily activities, including difficulty with personal care and limited walking, standing,

15   lifting, sitting, and even reclining."   (AR 22.)   The ALJ also, as observed by the

16   Commissioner, gave a number of other reasons for doubting the credibility of plaintiff's

17   assertions, including conflicts with the medical record and plaintiff's activities, and instances

18   shedding doubt on his truthfulness.   Additionally, although not discussed in the credibility

19   assessment, the ALJ had also, at step one, found that while a part-time job was not substantial

20   gainful activity, "it suggests that he is able to get out in public and interact in a work

21   environment."   (AR 18.)

22          Because the ALJ offered clear and convincing reasons for his credibility assessment,

01 errors as they relate to plaintiff's failure to follow prescribed treatment may be deemed

02 harmless.  *See Carmickle*, 533 F.3d at 1162-63 (error may be deemed harmless where there

03 remains the support of substantial evidence through other valid reasons to support the ALJ's

04 conclusion).  However, on remand, the ALJ should reassess plaintiff's credibility both with

05 respect to the issue of his obesity and the failure to diet, lose weight, and exercise, and as

06 necessitated by reassessment of the medical opinions, as discussed below.

07 <u>Medical Opinions</u>

08   In general, more weight should be given to the opinion of a treating physician than to a

09 non-treating physician, and more weight to the opinion of an examining physician than to a

10 non-examining physician.  *Lester*, 81 F.3d at 830.  Where not contradicted by another

11 physician, a treating or examining physician's opinion may be rejected only for "'clear and

12 convincing'" reasons.  *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

13 Where contradicted, a treating or examining physician's opinion may not be rejected without

14 "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

15 *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

16   "The opinion of a nonexamining physician cannot by itself constitute substantial

17 evidence that justifies the rejection of the opinion of either an examining physician or a treating

18 physician."  *Id*. at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) and

19 *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984)).  However, "the report of a

20 nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all*

21 *other evidence* in the record.'" *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (quoting

22 *Magallanes*, 881 F.2d at 752 (emphasis in original)).

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01      The ALJ may reject physicians' opinions "by setting out a detailed and thorough

02   summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

03   making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*,

04   881 F.2d at 751).   Rather than merely stating his conclusions, the ALJ "must set forth his own

05   interpretations and explain why they, rather than the doctors', are correct."   *Id*.   (citing

06   *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

07      Plaintiff argues that the ALJ erroneously rejected the opinions of treating physician Dr.

08   Eggertsen limiting him to sedentary work.   (AR 221, 288, 312-15, 386, 388.)   Again, he

09   asserts that, as of the date he turned fifty in October 2004, this restriction to sedentary work

10   leads to a conclusion of disability.   20 C.F.R. Pt. 404, App. 2, Tbl. 1, Rules 201.12, 201.14.

11      The ALJ addressed the opinions of Dr. Eggertsen as follows:

12      With respect to the issue of obesity, at the prior hearing, claimant said that he
        was 5'11 and 350 pounds.   His treating doctor, Sam Eggertsen, M.D., has told
13      him to lose weight.   It does not appear that claimant followed up on these
        constant recommendations, but Dr. Eggertsen never mentioned specific
14      functional observations relevant to the claimant's obesity, and has never really
        discussed it, even when describing particular examination findings.   In April
15      2005, the claimant said he was trying to work on exercise and weight loss.   His
        weight was down to 326 from 334.   Even though he claimed to be exercising,
16      by August 22, 2005, his weight was back up to 334.   Dr. Eggertsen strongly
        recommended diet and aerobic activity.

17
        By January 2006, the claimant's weight was down to 322.   His back pain was
18      doing well with Vicodin.   It has gone up since then, however.

19      In November 2006, Dr. Eggertsen assessed the claimant with a capacity for
        sedentary work with periodic alternating between sitting and standing.
20      Claimant could do limited pushing and pulling and had postural and
        manipulative limitations.   This discussion was based on consideration of the
21      claimant's obesity and his other impairments.   This was a check-box form
        without narrative support, and it is inconsistent with Dr. Eggertsen's treatment
22      notes and the objective findings of record.   Dr. Eggertsen's opinion was based

01   on the claimant's subjective complaints, apparently, and is not given great
02   weight.  Overall, in his treatment notes Dr. Eggertsen mentioned obesity but
     did not direct much attention to it other than advising the claimant to exercise
     more, and lose weight.

03
04   Later reports are also considered:  the claimant continued to see Dr. Eggertsen
     for routine follow-up and medication management.  The claimant was not
     compliant with diet and gained weight, staying over 300 pounds.  He
05   complained of radiating back pain, without radiation, and exacerbated by
     bending and lifting; he also reported that his pain was improved by exercise.
06   That inconsistency was unexplained.  In April 2007 Dr. Eggertsen stated that
     the claimant had bilaterally positive straight leg raise at 45 degrees.  That
07   would suggest a degree of back pain, but these findings are not described
     elsewhere in the record, and Dr. Eggertsen generally found the claimant in no
08   distress.

09   In January and February 2008 Dr. Eggertsen again assessed the claimant as
     capable of sedentary work without restrictions.  As before, these were
10   check-box reports without narrative support.  They are not consistent with his
     office notes showing that the claimant had mild pain and should perform aerobic
11   exercise as part of his treatment regimen.  All in all, these reports are very
     subjective.  Just as with the earlier assessment, the claimant's symptoms were
12   subjective without evidence to support them.  These reports are given scant
     weight with respect to the limitations indicated.

13

14   (AR 21; internal citations to record omitted.)   The ALJ then assessed the opinions of a

15   non-examining physician, Dr. Jeffrey Merrill, on a Physical RFC Assessment form (PRFCA):

16   A DDS reviewing source concluded that claimant could do light exertional work
     with occasional climbing, balancing, stooping, kneeling, crouching, and
17   crawling.  That assessment is consistent with the effects of the claimant's
     impairments, including obesity. Although the state agency doctor did not
18   examine the claimant, his opinion is more consistent with claimant's activities
     and objective findings.   This assessment is given very great weight.

19

20   (AR 22; internal citation to AR 178-83 omitted.)[2]

21   _____

22        2 The ALJ also gave "great weight" to the opinions of a reviewing psychologist who found mild
     and moderate limitations, and opined that claimant "could manage simple and complex tasks, and would

01    Plaintiff avers that the ALJ's failure to expressly cite either regulatory or Ninth Circuit

02 law as to the framework for assessing a treating physician's opinions is non-conclusive

03 evidence that the ALJ did not use that framework.   *See* 20 C.F.R. § 416.927 (Evaluating

04 opinion evidence).   He takes issue with the ALJ's reliance on the allegedly "mild" findings and

05 the recommendations to diet, lose weight, and exercise, for the reasons discussed above.

06 Plaintiff also challenges the apparent rejection of Dr. Eggertsen's opinions on the ground that

07 that physician did not address functional limitations in his clinical notes.   He asserts that a busy

08 physician offers such opinions not in clinical notes as a routine matter, but when asked for such

09 opinions, as Dr. Eggertsen did here.

10    Plaintiff notes that Dr. Eggertsen's opinions were not controverted by the opinion of a

11 treating or examining physician.   Instead, the ALJ gave "very great weight" to opinions

12 contained on the PRFCA signed by a non-examining physician, Dr. Merrill.   Plaintiff stresses

13 that the form was prepared by a non-physician adjudicator and only later affirmed by Dr.

14 Merrill, a fact not acknowledged by the ALJ.   He asserts error in the assignment of greater

15 weight to the check-box PRFCA, containing explanatory comments only from the

16 non-physician adjudicator.   *See* SSR 96-8p ("[T]he opinions of physicians or psychologists

17 who do not have a treatment relationship with the individual are weighed by stricter standards,

18 based to a greater degree on medical evidence, qualifications, and explanations for the opinions,

19 than are required of treating sources.")   Plaintiff argues that the Court should hold him clearly

20 disabled at step five, either since his SSI application month of June 2004 based on his inability

21

22 function[] best in a job with limited public contact and routine supervision."   (AR 22; internal citation
   omitted.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -20

01  to work full time, *see* SSR 96-8p, or since his fiftieth birthday in October 2004 due to Dr.

02  Eggertsen's opinions finding him limited to sedentary work, *see* 20 C.F.R. Pt. 404, App. 2, Tbl.

03  1, Rules 201.12, 201.14.

04       The fact that the ALJ did not recite the legal framework for the relative weight to afford

05  physicians' opinions is not, in and of itself, troubling.   However, consideration of that

06  framework in relation to the ALJ's decision in this case reveals reversible error.

07       SSR 96-6p addresses the proper treatment of opinions of reviewing State agency

08  consultants and other program physicians and psychologists.   It does not discuss

09  non-physician adjudicators.   Nor does it reflect that a State agency physician affirming the

10  assessment of a non-physician adjudicator must provide independent analysis.   Instead, SSR

11  96-6p indicates that a State agency physician's explanation for his or her opinion is one of

12  several different factors to consider in determining the weight to accord that opinion.   As such,

13  as argued by the Commissioner, the ALJ did not err in giving weight to the opinions of Dr.

14  Merrill, who, in signing the form, indicated he had reviewed the evidence in the file and

15  affirmed the opinions in the PRFCA as written.   (AR 183.)

16       However, as argued by plaintiff, it is questionable whether substantial evidence

17  supports the ALJ's decision to give greater weight to the opinions of Dr. Merrill over those of

18  Dr. Eggertsen.   An ALJ permissibly rejects opinions rendered on check-off reports lacking any

19  explanation for the conclusions reached.   *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1995).

20  Here, the ALJ criticized the opinions of Dr. Eggertsen, in part, based on their inclusion in

21  check-box forms, without narrative support.   (AR 21.)   Yet, he rendered no such criticism of

22  the check-box form signed by Dr. Merrill.   (AR 22.)   While the PRFCA did contain one

01   explanatory paragraph (AR 180), the information contained within that paragraph did not

02   significantly, if at all, exceed that contained on Dr. Eggertsen's various forms (*see* AR 220,

03   287, 313-14, 388).   Nor did the ALJ provide any explanation as to how Dr. Eggertsen's

04   opinions were inconsistent with his treatment notes and the objective findings, or how Dr.

05   Merrill's were consistent with plaintiff's activities and the objective findings.  (AR 21-22.)

06   Also, as discussed above, plaintiff legitimately criticizes the ALJ's focus on plaintiff's failures

07   in relation to his obesity and, to some extent, the ALJ's reflections as they relate to the objective

08   findings in the record.

09         Plaintiff's argument as it relates to Dr. Eggertsen's failure to mention specific

10   functional observations relevant to plaintiff's obesity is not entirely persuasive.   While

11   criticizing the failure to mention such observations, the ALJ later stated that Dr. Eggertsen

12   based his November 2006 opinions, which included specific assessed limitations, "on

13   consideration of plaintiff's obesity and his other impairments."  (AR 21.)   Interestingly, the

14   November 2006 form included references to back and shoulder pain, but did not actually

15   mention plaintiff's obesity.  (AR 312-15.)   At the same time, as argued by plaintiff, a treating

16   physician would be more likely to address specific functional limitations in forms seeking such

17   information, rather than in treatment records.   However, the lack of any mention in the

18   treatment records could be significant as evidence that plaintiff never mentioned any limitations

19   due to his weight as part of his complaints or as part of his medical history.

20         The Court also notes that, although not discussed in the ALJ's second decision or

21   brought up by the parties in their arguments, the record contained an additional opinion from an

22   examining or treating physician, Dr. Chin, limiting plaintiff to sedentary work.   (AR 202-03.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -22

01  While the ALJ's decision to afford Dr. Chin's opinion little weight may well withstand

02  scrutiny, the existence of a second opinion from an examining or treating physician further

03  detracts from the ALJ's decision to rely on the single opinion of a non-examining physician.

04  *See*, *e.g.*, *Lester*, 81 F.3d at 831 ("The opinion of a nonexamining physician cannot by itself

05  constitute substantial evidence that justifies the rejection of the opinion of either an examining

06  physician or a treating physician.") (cited sources omitted).

07          Given the above-described deficiencies in the ALJ's rejection of Dr. Eggertsen's

08  opinions, those opinions could be credited as true.   *See Lester*, 81 F.3d at 830-34 ("Where the

09  Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or

10  examining physician, [the Court credits] that opinion as 'a matter of law.'"; finding that, if

11  doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a

12  listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)).   Crediting an opinion

13  as a matter of law is appropriate when, taking that opinion as true, the evidence supports a

14  finding of disability.   *See*, *e.g.*, *Schneider v. Commissioner of Social Sec. Admin.*, 223 F.3d

15  968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given the effect

16  required by the federal regulations, it becomes clear that the severity of [plaintiff's] functional

17  limitations is sufficient to meet or equal [a listing.]"); *Smolen v. Chater*, 80 F.3d 1273, 1292

18  (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony, physicians'

19  opinions, and lay testimony legally insufficient; finding record fully developed and disability

20  finding clearly required).   In this case, for the reasons described below, plaintiff fails to

21  demonstrate that Dr. Eggertsen's opinions should be credited as true.

22          The Commissioner observes several legitimate reasons for the ALJ's assessment of Dr.

Eggertsen's opinions.  The reports completed by Dr. Eggertsen were in check-box format,

arguably unsupported by the treatment notes, and arguably, at least in part, reliant on plaintiff's

subjective complaints,[3] which the ALJ found not credible.  *See, e.g.*, *Batson v. Commissioner*,

359 F.3d 1190, 1195 (9th Cir. 2004) (a treating physician's opinions may be discounted when it

is "in the form of a checklist, did not have supportive objective evidence, was contradicted by

other statements and assessments of [the claimant's condition], and was based on [the

claimant's] subjective descriptions of pain[,]" as well as when that opinion is "conclusory,

brief, and unsupported by the record as a whole . . . or by objective medical findings[.]") and

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating

physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been

properly discounted as incredible.") (quoted and cited sources omitted).  The ALJ also noted

the reflection in Dr. Eggertsen's notes that plaintiff's pain was improved with medication and

exercise.  (AR 21.)  (*See, e.g.*, AR 308 (May 2005 treatment note from Dr. Eggertsen stating:

"50-year-old with chronic back pain, stable on current medication along with exercise and

hypertriglyceridemia, on Niacin and Gemfibrozil."); AR 340 (April 2007 treatment note from

Dr. Eggertsen stating:  "A 52-year-old with mild thoracic outlet syndrome symptoms, chronic

pain, hypertension, under good control, hyperlipidemia, under good control, and mild

diabetes."))  Given the legitimate aspects of the ALJ's reasoning, and based on review of the

record as a whole, the Court concludes that crediting Dr. Eggertsen's opinions as true and

awarding benefits would not be appropriate in this case.  *See, e.g.*, *Connett v. Barnhart*, 340

F.3d 871, 876 (9th Cir. 2003) (reflecting that courts retain flexibility in applying the "'crediting

---

3 Dr. Eggertson did, in his November 2006 report, recite the MRI findings.  (AR 313.)

01  as true' theory."; remanding for further determinations where there were insufficient findings

02  as to whether plaintiff's testimony should be credited as true); *Barbato v. Commissioner of Soc.*

03  *Sec. Admin.*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) ("In some cases, automatic reversal

04  would bestow a benefits windfall upon an undeserving, able claimant."; remanding for further

05  proceedings where the ALJ made a good faith error, in that some of his stated reasons for

06  rejecting a physician's opinion were legally insufficient).

07      Instead, the Court concludes that the ALJ in this case should have contacted Dr.

08  Eggertsen for further information.   An ALJ has an obligation to recontact a treating physician

09  or psychologist when the evidence received is inadequate for a determination of disability.   20

10  C.F.R. §§ 404.1512(e), 416.912(e).   *See also Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th

11  Cir. 2006) ("[T]he ALJ should not be 'a mere umpire' during disability proceedings. Rather, the

12  ALJ has 'a special duty to fully and fairly develop the record and to assure that the claimant's

13  interests are considered.'") (quoted sources omitted).   The "ALJ's duty to develop the record

14  further is triggered only when there is ambiguous evidence or when the record is inadequate to

15  allow for proper evaluation of the evidence."   *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th

16  Cir. 2001).   *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous

17  evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation

18  of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoted source

19  omitted).   The applicable regulations note that additional evidence or clarification is sought

20  when a medical source's report "contains a conflict or ambiguity that must be resolved, . . . does

21  not contain all the necessary information, or does not appear to be based on medically

22  acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1),

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -25

01   416.912(e)(1).

02       The Commissioner would presumably argue that there was no duty to recontact where

03   Dr. Eggertsen's opinions were not supported by the clinical evidence and based on the

04   claimant's subjective complaints, and where the ALJ found the record adequate to make a

05   determination as to disability.  *See*, *e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.

06   1995).  However, the Court finds that the disparity between the findings in the treatment notes

07   and the conclusions reached on the check-box forms presents an unresolved ambiguity.

08   Additionally, the Commissioner repeatedly points to a perceived inconsistency by the ALJ in

09   that Dr. Eggertsen simultaneously assessed plaintiff as limited to sedentary work while

10   recommending that he undertake aerobic activity.  (AR 21, 222, 289, 387, 389.)  This is not

11   necessarily an inconsistency.  That is, it would seem reasonable for a physician to find an

12   individual in his present state restricted to sedentary work due to obesity and back pain, but

13   nonetheless recommend aerobic activity as a means of treating the restricting conditions.

14   Nonetheless, the ALJ was clearly troubled by this perceived inconsistency.   Also, the record in

15   this case as a whole contains notably minimal opinion evidence.

16       The Court also takes note of the fact that Dr. Eggertsen, in November 2006, found

17   plaintiff capable of a slightly greater capacity of work than on other occasions in finding

18   plaintiff capable of lifting up to ten pounds both occasionally and frequently, and of standing

19   and/or walking at least two hours in an eight-hour workday.  (AR 312.)  Dr. Eggertsen had on

20   other occasions found plaintiff limited to occasional lifting of up to ten pounds and frequent

21   lifting of either up to five pounds or "such articles as files and small tools[,]" and to work which

22   "may require sitting, walking and standing for brief periods."  (AR 221, 288, 312, 386, 388.)

01    This disparity raises a possible question as to whether, based on Dr. Eggertsen's opinions as to

02    sedentary work, plaintiff could be deemed disabled as of his fiftieth birthday pursuant to the

03    Medical-Vocational Guidelines.   *See* 20 C.F.R. Pt. 404, App. 2, Tbl. 1, Rules 201.12, 201.14

04    (designating disability for individuals limited to sedentary work) and 20 C.F.R. §§ 404.1567(a),

05    416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and

06    occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a

07    sedentary job is defined as one which involves sitting, a certain amount of walking and standing

08    is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are

09    required occasionally and other sedentary criteria are met.")   *See also infra* at 27-28

10    (discussing an additional issue precluding a finding of disability based on the

11    Medical-Vocational Guidelines).

12         In sum, the Court recommends that this matter be remanded for further administrative

13    proceedings.   The ALJ should contact Dr. Eggertsen for further explanation of the bases for his

14    opinions finding plaintiff limited to sedentary work and to explain the discrepancy between his

15    findings in November 2006 and on other occasions.   The ALJ should also call a medical expert

16    to obtain an additional medical opinion.

17                                        <u>Remand</u>

18         As stated above, this case should be remanded for further administrative proceedings.

19    The Court separately addresses below other arguments offered in favor of remand for an award

20    of benefits.

21         Plaintiff argues that, based on the opinions finding him limited to sedentary work, he

22    could be deemed disabled as of his fiftieth birthday in October 2004 pursuant to the

01 Medical-Vocational Guidelines.   20 C.F.R. Pt. 404, App. 2, Tbl. 1, Rules 201.12, 201.14.

02 However, in order to be deemed disabled as a matter of law under those rules, a claimant would

03 have to have unskilled past relevant work experience or no transferable skills.   *Id*.   Plaintiff's

04 past relevant work included unskilled work as a kitchen helper and semi-skilled work as a

05 forklift operator.   (*See* AR 450 and SSR 00-4p.)   Plaintiff concedes that the ALJ did not

06 determine the issue of transferable skills.   He maintains that he could not reasonably be found

07 to have transferable skills to sedentary work from such low-semi-skilled work.   He

08 alternatively argues that, if the Court does not agree he did not have transferable skills, it should

09 remand for a determination as to whether he has transferable skills from his work as a forklift

10 operator to semi-skilled sedentary work.

11      Because the ALJ did not address the issue, it would not be appropriate for the Court to

12 render a decision as to transferable skills.   At the very least, therefore, this matter requires

13 remand as to this issue.

14      Plaintiff also argues generally that he could be deemed clearly disabled at step five

15 based on his inability to work full time.   *See* SSR 96-8p (defining RFC as ability to work on a

16 "regular and continuing basis[,]" meaning "8 hours a day, for 5 days a week, or an equivalent

17 work schedule.")   However, he does not point to any medical opinions, from Dr. Eggertsen or

18 otherwise, supporting an assertion as to his inability to work full time.   Dr. Eggersten

19 repeatedly assessed plaintiff as able to work at the sedentary level and "able to participate in

20 pre-employment activities such as job search or employment classes[.]"   (AR 221-22, 288-89,

21 386.)   Dr. Eggertsen did, in a March 2008 documentation request form, opine that plaintiff was

22 limited to working "11-20" hours per week due to his back pain.   (AR 388.)   However, he had

01   not so opined on a like form completed two months prior (AR 386), or indicated any similar

02   opinion in the preceding years.   Moreover, to the extent plaintiff relies on his own assertion of

03   an inability to work full time, the ALJ offered sufficient reasons for doubting plaintiff's

04   credibility.   As such, plaintiff fails to adequately support his assertion that he could be deemed

05   clearly disabled based on an inability to work full time.

06                                               **<u>CONCLUSION</u>**

07          For the reasons set forth above, this matter should be REMANDED for further

08   administrative proceedings.   A proposed order accompanies this Report and Recommendation.

09          DATED this <u>16th</u> day of June, 2010.

11                                                            _____

                                                             Mary Alice Theiler

12                                                           United States Magistrate Judge

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -29